UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MSMM ENGINEERING, LLC                                          CIVIL ACTION

VERSUS                                                              NO. 21-1412

GINO CARR                                                        SECTION "R" (5)

### ORDER AND REASONS

Before the Court is plaintiff MSMM Engineering, LLC's ("MSMM") motion for entry of a default judgment.[1] For the following reasons, the Court denies the motion.

### I.  BACKGROUND

This case arises out of loan provided by plaintiff MSMM to defendant Gino Carr, to be invested and utilized in connection with FEMA's Emergency Home Repairs Project in the Virgin Islands.[2] To secure the loan, defendant executed a promissory note on April 30, 2018.[3] Under the terms of the promissory note, Carr promised to pay MSMM the principal amount of $75,000 by July 15, 2018, and any interest on the unpaid principal balance

---

[1]   R. Doc. 8.
[2]   R. Doc. 8-2 at 3 (Promissory Note).
[3]   *Id.*

at a rate of ten percent per annum beginning on July 15, 2018 until the amount is fully repaid.[4] Carr further promised to pay a "projected profit of at least $150,000" by March 15, 2019, plus any interest on the unpaid balance of the projected profits of ten percent per annum after March 15, 2019 until the projected profit is fully repaid.[5] In the event of a default or breach, the note requires Carr to "immediately pay" the principal plus a projected profit of $150,000.[6] The promissory note also requires defendant to pay "[a]ll costs, expenses[,] and expenditures including, and without limitation, the complete legal costs incurred by [MSMM] in enforcing this Note as a result of any default by the borrower."[7]

On May 1, 2018, MSMM remitted a check for the principal amount of $75,000 to Carr.[8] Pursuant to the promissory note, Carr agreed to the terms of the note upon his receipt of the $75,000.[9] MSMM alleges that defendant has failed to make any of the required payments due by July 15, 2018 and March 15, 2019, or any of the accrued interest resulting from the nonpayment.[10] On January 25, 2019, Carr contacted MSMM's president,

---

[4]     *Id.*
[5]     *Id.*
[6]     *Id.*
[7]     *Id.*
[8]     *Id.* at 5 (Check); *id.* at 6 (Bank Statement).
[9]     *Id.* at 4 (Promissory Note).
[10]    *Id.* at 1 (Declaration of Manish Mardia).

Manish Mardia, informing her that the "FEMA STEP Project in the Virgin Islands has been a colossal failure," and apologizing for his delay in the repayment of the loan.[11] Carr also assured Mardia "that every penny will be repaid in its entirety," and that he would provide Mardia with a "detailed repayment plan" in February.[12] After not hearing from Carr regarding a payment plan, on March 6, 2019, Mardia sent Carr a demand letter for repayment of the loan, with interest, within one week.[13]

On May 10, 2019, plaintiff's attorney sent Carr another demand letter for repayment. The letter offered to settle the dispute in its entirety if Carr repaid MSMM the principal amount of $75,000 by May 25, 2019.[14] Carr did not respond until June 17, 2019, at which time he proposed a repayment plan for the $75,000 with monthly payments beginning in August of 2019.[15] After Carr failed to follow this proposed schedule, MSMM's attorney wrote to him on October 31, 2019 suggesting a new repayment schedule that would begin on December 1, 2019.[16] In response, Carr stated that he would not be able to begin repayments on December 1.[17] In January of 2020, he proposed yet

---

[11]     *Id.* at 7 (January 25, 2019 E-Mail from Carr to Mardia).
[12]     *Id.* (January 25, 2019 E-Mail from Carr to Mardia).
[13]     *Id.* at 8 (March 6, 2019 Letter from Mardia to Carr).
[14]     *Id.* at 20 (May 10, 2019 Letter from Phelps Dunbar to Carr).
[15]     *Id.* at 24-25 (June 17, 2019 E-Mail from Carr to Mardia).
[16]     *Id.* at 26-27 (Oct. 31, 2019 Letter from Phelps Dunbar to Carr).
[17]     *Id.* at 28 (Nov. 26, 2019 E-Mail from Carr to Mardia and Korn).

another repayment schedule, set to begin on March 1, 2020.[18] To date, MSMM still has not received any payments from Carr.[19]

On July 25, 2021, plaintiff filed this diversity action against Carr, seeking repayment of the principal amount and expected profits, together with interest, as well as costs, attorneys' fees, and expenses related to the enforcement of the promissory note.[20] On October 7, 2021, Carr executed a waiver of service which stated that he understood that he had to "file and serve an answer or motion under Rule 12 within 60 days from" October 1, 2021.[21] Despite this acknowledgement, defendant failed to file a timely answer or responsive pleading. On December 13, plaintiff notified Carr that it would seek an entry of default if Carr did not file a responsive pleading by the close of business.[22] After defendant again did not respond, plaintiff moved for an entry of default against Carr on December 15, 2021,[23] and the clerk entered default against him on December 17, 2021.[24] Plaintiff now

---

[18]   *Id.* at 30-31 (Jan. 12, 2020 E-Mail from Carr to Mardia and Korn).
[19]   *Id.* at 1-2 (Declaration of Manish Mardia).
[20]   R. Doc. 1 ¶ 13.
[21]   R. Doc. 5.
[22]   R. Doc. 8-5 at 1 (Dec. 13, 2021 E-Mail from Phelps Dunbar to Carr).
[23]   R. Doc. 6.
[24]   R. Doc. 7.

seeks a default judgment against Carr.[25] Carr has not filed an opposition to this motion.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 55(b), a default judgment may be entered against a party when it fails to plead or otherwise respond to a complaint within the required time period. Fed. R. Civ. P. 55(b). A plaintiff who seeks a default judgment against an unresponsive defendant must proceed through two steps. First, the plaintiff must petition the court for the entry of default, which is simply "a notation of the party's default on the clerk's record of the case." *Dow Chem. Pac. Ltd. v. Rascator Mar. S.A.*, 782 F.2d 329, 335 (2d Cir. 1986). Before the clerk may enter the default, the plaintiff must show "by affidavit or otherwise" that the defendant "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a).

After the defendant's default has been entered, the plaintiff may move for a default judgment. *Meyer v. Bayles*, 559 F. App'x 312, 313 (5th Cir. 2014) (per curiam). At this stage, plaintiff's well-pleaded factual allegations are deemed admitted. *See Nishimatsu Const. Co., Ltd. v. Hous. Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). But, the court does not hold the defaulting

---

[25] R. Doc. 8.

defendant to have "admitt[ed] facts that are not well-pleaded or . . . conclusions of law." *Id.* Accordingly, a default judgment should not be entered unless the judgment is "supported by well-pleaded allegations and . . . ha[s] a sufficient basis in the pleadings." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (internal quotations omitted) (citing *Nishimatsu*, 515 F.2d at 1206).

If the plaintiff's claim is for a sum certain and the defendant has not made an appearance in court, the clerk may enter a default judgment. Fed. R. Civ. P. 55(b)(1). In all other cases, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). No party is entitled to a default judgment as a matter of right. *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). The disposition of a motion for the entry of default judgment rests within the sound discretion of the district court. *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977).

### III. DISCUSSION

Before entering a default judgment, a district court must "look into its jurisdiction both over the subject matter and the parties." *Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001) (internal quotations omitted) (quoting *Williams v. Life Sav. & Loan*, 802

6

F.2d 1200, 1203 (10th Cir. 1986). Because a judgment entered in the absence of jurisdiction is void, a court must refrain from entering judgment if its jurisdiction is uncertain.

Here, subject matter jurisdiction is premised on diversity of citizenship. *See* 28 U.S.C. § 1332. Plaintiff alleges that it is a "Louisiana limited liability company domiciled in the Parish of Orleans, State of Louisiana," and that defendant is a citizen of Georgia.[26] For diversity purposes, the citizenship of an LLC "is determined by the citizenship of all of its members." *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008). And if any member of an LLC is an unincorporated entity, "the rule for multilayered companies states that the citizenship must be traced through however many layers of partners or members there may be in order to determine the citizenship of the entity." *Advoc. Fin. v. Mahner*, No. 10-24, 2010 WL 2522636, at *2 (M.D. La. June 15, 2010).

MSMM represents that it is a Louisiana LLC with a domicile address in Louisiana. But neither MSMM's principal place of business nor the state under whose laws it is organized determines its citizenship, so these facts are insufficient to establish the existence of diversity jurisdiction. *Harvey*, 542 F.3d at 1080; *see also Mahner*, 2010 WL 2522636, at *2 (holding that a

---

26   R. Doc. 1 ¶¶ 1-2.

limited liability company that is "organized under the laws of Louisiana, and [has] registered agents [with] addresses in Louisiana" is not a Louisiana citizen for purposes of diversity). And MSMM has failed to provide any information about its membership or the citizenship of its members. Accordingly, "the Court will not speculate as to the composition of the company[y]." *Gross v. RSJ Int'l, LLC*, No. 11-73, 2012 WL 27772, at *3 (E.D. La. Jan. 5, 2012) (denying plaintiff's motion for default judgment because plaintiff provided "no indication" about the citizenship of members of two defendant LLCs); *see also Mullins v. TestAmerica, Inc.*, 300 Fed. App'x 259, 260-61 (5th Cir. 2008) (per curiam) (finding that allegations in a notice of removal identifying defendant simply as "a limited partnership existing under the laws of the State of New York" without mentioning the company's partners or their respective states of citizenship were "facially insufficient to establish the existence of diversity jurisdiction," even absent a dispute between the parties as to jurisdiction).

The Court has discretion to give plaintiff an opportunity to amend its complaint to cure its defective jurisdictional allegations. *See* 28 U.S.C. § 1653 ("Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."). Although section 1643 is "liberally construed," courts permit amendments to cure defective jurisdictional allegations only

8

when "examination of the record as a whole discloses at least a substantial likelihood that jurisdiction exists." *Mullins*, 300 Fed. App'x at 260-61. Based on plaintiff's complaint and motion for default judgment, the Court finds that such "substantial likelihood" exists, and therefore grants plaintiff leave to amend its complaint to allege "distinctly and affirmatively" the jurisdictional facts that give rise to diversity jurisdiction. In so doing, plaintiff must provide the Court with a list of all of its members and their respective citizenships.

## IV. CONCLUSION

For the foregoing reasons, plaintiff's motion for default judgment is DENIED. Plaintiff is granted leave to amend its pleadings to remedy the deficiencies identified by this Order. Plaintiff is ORDERED to file, within fourteen days from the date of this Order, an amended complaint that adequately sets forth its citizenship for purposes of diversity.

New Orleans, Louisiana, this ___3rd___ day of May, 2022.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE